IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



DARIEN BRANNEN,

    **Plaintiff,**

v.

    CIVIL NO. 2:18-cv-602

SELENE FINANCE LP,

    **Defendant.**

## OPINION AND ORDER

This lawsuit arises out of a mortgage loan dispute between Darien Brannen ("Plaintiff"), the borrower, and Selene Finance LP ("Defendant" or "Selene"), his loan servicer, after Plaintiff fell behind on his mortgage payments. Plaintiff's complaint alleges that Defendant violated two federal laws in connection with Plaintiff's attempts to obtain loan modification relief from the Defendant. Defendant now moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. ECF No. 6. For the reasons set forth herein, Defendant's Motion to Dismiss Plaintiff's Complaint is **GRANTED**, and Plaintiff's complaint is **DISMISSED** consistent with the directives of this Opinion and Order.

### I.    FACTUAL BACKGROUND

The facts recited herein are drawn from the Plaintiff's complaint and are assumed true only for purposes of deciding the motion to dismiss currently before the Court. They are not to be considered factual findings by this Court. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

On May 15, 2006, Plaintiff entered into a mortgage loan contract to purchase property in Suffolk, Virginia. Complaint, ECF No. 1-1 ("Compl."), ¶ 4. Plaintiff's loan was for $467,800.00, and it was evidenced by a promissory note ("Note") and secured by a deed of trust ("DOT"). Id.; see Note, "Ex. 1" to Compl., ECF No. 1-1, at 10–16; see DOT, id. at 17–43. The terms of

1

Plaintiff's Note reflect an adjustable rate mortgage, calling for an initial interest rate of 5.25% and initial monthly payments of $2,046.63 through September 2006, with variable interest rates and monthly payments thereafter. Note, "Ex. 1" to Compl., ECF No. 1-1, at 10–16.

Plaintiff alleges that, sometime after securing this loan, "[he] fell behind on his payments." Compl. ¶ 6. He further alleges that, on or about August 22, 2014, he entered into a loan modification agreement with Selene, which increased Plaintiff's loan principal to $512,790.17 but reduced his interest rate to 4% and reduced his owed monthly payments to $1,532.58 per month. Id. ¶ 7; see Loan Modification Agreement, "Ex. B" to Compl., ECF No. 1-1, at 44–55.

### Plaintiff's Attempts to Obtain Additional Loss Mitigation

According to the complaint, sometime after Plaintiff obtained this loan modification in 2014, he and his wife again began experiencing financial difficulty due to a decrease in his wife's income. Compl. ¶ 10. Presumably because of this financial difficulty, Plaintiff allegedly contacted the defendant, Selene, on five occasions over a period of approximately two years to request loan modification and/or loss mitigation relief as follows:

First, on some unalleged date, Plaintiff allegedly "contacted Selene to discuss loss mitigation options." Id. ¶ 11. According to Plaintiff, Selene offered a repayment agreement that he allegedly could not afford, but the terms of such proposal are not alleged. Id.

Second, sometime in 2016, Plaintiff allegedly submitted "a loss mitigation application" to Selene, which Selene reportedly denied for being incomplete. Id. ¶ 12. Plaintiff does not allege whether he appealed this denial or tried to supplement the application.

Third, sometime in 2017, Plaintiff allegedly submitted another loss mitigation application to Selene, which Selene reportedly denied "due to insufficient income." Id. ¶ 13. Plaintiff does not allege whether he appealed this denial.

Fourth, in January 2018, Plaintiff allegedly "contacted" Selene, which reportedly offered Plaintiff another repayment agreement that he allegedly could not afford. Id. ¶ 14. The terms of this proposed agreement are not alleged.

Fifth, in May of 2018, Plaintiff was once again allegedly "denied for a loan modification" presumably by Selene. Id. ¶ 15. Plaintiff claims that this denial was based on a calculation of his household expenses that included the expenses of his wife, who contributes to household income but is not a borrower on the loan. Id.

### Selene's Denial of Plaintiff's 2018 Appeal

After this last denial, Plaintiff allegedly retained the legal services of Heath J. Thompson P.C. to assist him with his "ongoing mortgage issues." Id. ¶ 16. According to the complaint, "[a] representative from Selene, Tammy, was given as the single point of contact for [Plaintiff's] loan." Id. ¶ 17. On June 20, 2018, a representative from Heath J. Thompson P.C. allegedly "faxed an appeal for the loan modification denial" to Selene. Id. ¶ 18. On July 3, 2018, Selene informed such representative that Plaintiff's appeal was denied. Id. ¶ 19. Plaintiff claims that, during that conversation, a representative for Selene – whose name is not alleged – stated that "she had reviewed the case many times before and did not feel the need to review it again." Id. ¶ 20.

## II. PROCEDURAL HISTORY

On October 4, 2018, Plaintiff filed a two-count complaint against Defendant Selene in the Circuit Court for the City of Suffolk seeking $70,000 in damages. ECF No. 1 ¶ 1. Count I of the complaint alleges that Defendant violated Section 1024.41(h) of Regulation X of the Real Estate Settlement Procedures Act ("RESPA") in connection with the review and subsequent appeal of Plaintiff's "loss mitigation application." Compl. ¶¶ 26–29. The loss mitigation application referenced here is presumably the application denied in May of 2018, since this is the only application alleged in the complaint to have an associated appeal. See id. ¶ 18. Count II of the

3

complaint alleges that Defendant violated Section 1639c of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., when reviewing Plaintiff's loss mitigation requests. Id. ¶¶ 30–40.

On November 14, 2018, Defendant removed Plaintiff's action to this Court pursuant to 28 U.S.C. §§ 1441, 1446. ECF No. 1 ¶ 4. On December 5, 2018, Defendant filed the instant Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure along with a supporting memorandum ("Mem."). ECF Nos. 6 and 7. Defendant's motion was fully briefed by the parties. See Plaintiff's Memorandum in Opposition ("Opp."), ECF No. 11; Defendant's Reply, ECF No. 12. The Court declined to set the matter for hearing because the facts and legal arguments are adequately presented in the parties' briefs and oral argument would not aid in the Court's decisional process. See Fed. R. Civ. P. 78. Defendant's motion is now ripe for decision.

### III.  LEGAL STANDARD

Defendant moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion should be granted if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (citation omitted). To survive a motion to dismiss, the complaint need not contain detailed factual allegations, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The claim must be "plausible on its face." Id. at 570.

In resolving a Rule 12(b)(6) motion, the court must assume the truth of all facts alleged in the complaint and construe the factual allegations in favor of the non-moving party. Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009). But the court is not bound by the complaint's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Furthermore, the court may not consider any matters outside the pleadings, but it may consider written instruments that are attached as exhibits to a pleading, Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), as these exhibits are "part of the pleading for all purposes," Fed. R. Civ. P. 10(c).

## IV. DISCUSSION

Defendant moves to dismiss both counts of Plaintiff's complaint on the grounds that neither the RESPA claim alleged in Count I nor the TILA claim alleged in Count II apply to Plaintiff's loan modification efforts as alleged in the complaint. Defendant further argues that, even if the TILA provision alleged in Count II did apply, such claim is time-barred because it was not filed within three years of Plaintiff's 2014 loan modification agreement. Id. at 9 n.3 (citing 15 U.S.C. § 1640(e)). As a threshold matter, Plaintiff concedes in his opposition brief that his TILA claim in Count II is barred by a three-year statute of limitations and thus moves to strike Count II from his complaint. Opp., ECF No. 11, at 7. Therefore, the only remaining issue before the Court is whether Plaintiff's RESPA claim in Count I states a plausible claim for relief that should survive Defendant's Rule 12(b)(6) motion.

As noted above, Count I alleges that Defendant violated Section 1024.41(h)(3) of RESPA's loss mitigation rules when processing the appeal of Plaintiff's loan modification denial in 2018. Compl. ¶¶ 26–29. Section 1024.41(h)(3) provides that "[a]n appeal shall be reviewed by different personnel than those responsible for evaluating the borrower's complete loss mitigation application." 12 C.F.R. § 1024.41(h)(3).[1] Defendant moves to dismiss Count I on two separate grounds, which are discussed in turn below.

---

[1] For these purposes, a complete loss mitigation application means "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." Id. § 1024.41(b).

5

First, Defendant argues that Count I fails to state a claim for a violation of RESPA's loss mitigation rules as a matter of law because such rules do not apply to subsequent loss mitigation requests after a borrower has already fully availed himself of the RESPA loss mitigation process, as the Plaintiff did here. In support, Defendant cites to a prior decision of this Court, Phillips v. Wells Fargo Bank, N.A., which dismissed a borrower's RESPA claim because the lender had already processed a complete loss mitigation application in 2013 and thus was under no obligation to comply with RESPA's loss mitigation rules with respect to a subsequent application in 2017. No. 3:17cv519, 2018 WL 659199, at *3 (E.D. Va. Feb. 1, 2018) (Gibney, J.). Relying on 12 C.F.R. § 1024.41(i), the Court reasoned that "[a] servicer must comply with [RESPA's] loss mitigation provisions only for a single, complete loss mitigation application on a given loan."[2] Id. at *2. However, the Philips Court cautioned that Section 1024.41(i) was recently amended, effective October 19, 2017, to require servicers to comply with RESPA's loss mitigation rules for subsequent loss mitigation applications if the borrower became current on the loan at some point after submitting his first complete loss mitigation application.[3] Id. at *2 n.3.

In the instant case, the facts alleged in the complaint indicate that Plaintiff already availed himself of RESPA's loss mitigation rules in 2014 when he entered into the loan modification agreement with Defendant. Compl. ¶ 7. Therefore, unless Plaintiff can show that he became current on his loan sometime after October 19, 2017, when the amendment to Section 1024.41(i) became effective, his claim that Defendant violated Section 1024.41 of RESPA with respect to a

---

[2] Plaintiff's claim that a completed loan modification application must be appealed by the borrower before this duplicative-review rule of 12 C.F.R.§ 1024.41(i) applies, see ECF No. 11 at 5, is without legal support and is defied by a plain reading of that provision.

[3] 12 C.F.R. § 1024.41(i), as amended, states: "A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower *and the borrower has been delinquent at all times since submitting the prior complete application*." Id. (emphasis added).

6

subsequent loss mitigation application fails as a matter of law. In his complaint, Plaintiff does not allege any facts about whether he was ever current on his loan, leaving his right to relief under RESPA a matter of pure speculation. For this reason, Count I does not set forth sufficient factual allegations to survive a Rule 12(b)(6) motion and must be dismissed.[4]

Defendant's second argument for dismissal is that Count I fails to allege that the same person who reviewed and denied his loan modification application in May of 2018 was the same person who reviewed and denied his appeal of such application, which is necessary to state a claim that Defendant violated Section 1024.41(h)(3). The Court agrees. The only facts asserted in support of Count I are as follows: "Based on Selene representative Tammy's statements and attitude about [Plaintiff's] file, it appears she flagged [Plaintiff's] loss mitigation application for denial and upon appeal also did not properly review the denial." Id. ¶ 28. But the complaint does not state who denied Plaintiff's application in 2018. It merely states "Plaintiff was denied for a loan modification . . ." Id. ¶ 15. Nor does the complaint state who reviewed and denied Plaintiff's related appeal. It merely states that Plaintiff's law firm "was informed that the appeal was denied." Id. ¶ 19. Moreover, the alleged fact that "Tammy was given as the single point of contact" at Selene, id. ¶ 17, does not give rise to a reasonable inference that Tammy performed any direct reviews of Plaintiff's application or appeal. The only paragraph in the complaint that even hints at Tammy's involvement is paragraph 20, which states that "Selene's representative," presumably Tammy, "expressed that she had reviewed [Plaintiff's] case many times before and did not feel the

---

[4] Regardless of this pleading deficiency, Plaintiff argues that Defendant should be estopped from "claiming the benefit" of the duplicative-review exclusion contained in Section 1024.41(i) because Defendant engaged in active review of Plaintiff's subsequent application. ECF No. 11 at 5 ("By choosing to continue their review, Selene was required to, in fact, continue their review.") Id. at 6. This argument is without merit. "Elements necessary to establish equitable estoppel, absent a showing of fraud and deception, are a representation, reliance, a change of position, and detriment." Dominick v. Vassar, 235 Va. 295, 298 (1988) (citation omitted). Here, Plaintiff cannot show change of position or detriment because his statutory rights under RESPA are defined by statute and thus cannot be changed by the words or actions of the Defendant.

7

need to review it again." Id. ¶ 20. However, using this statement or any alleged "attitude" to conclude that Tammy, or any other person, processed both Plaintiff's 2018 application and his subsequent appeal is pure speculation. To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. For this reason, too, Count I must be dismissed.

V. CONCLUSION

For the reasons above, Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 6, is **GRANTED** as follows:

1. Count I of Plaintiff's complaint is hereby **DISMISSED WITHOUT PREJUDICE**. If Plaintiff desires to amend such claim, Plaintiff is **ORDERED** to file within **FOURTEEN (14) DAYS** of the date hereof a First Amended Complaint curing the deficiencies identified in this Opinion and Order with well-pled, truthful allegations.

2. Based on Plaintiff's admission that Count II of his complaint is barred by the applicable statute of limitations, Count II is hereby **DISMISSED** with **PREJUDICE**.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
February 11, 2019